UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DARLENE D. YOUNG-SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 14-179-PLA<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 3, 2014, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on February 13, 2014, and March 3, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 29, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on November 27, 1950. [Administrative Record ("AR") at 158.] She has a general education degree and past relevant work experience as an appointment clerk, hostess, and realtor. [AR at 179.]

On December 28, 2010, plaintiff filed an application for Disability Insurance Benefits ("DIB"), and on March 28, 2011, an application for Supplemental Security Income ("SSI"). [AR at 75, 158-66.] Plaintiff alleged disability beginning on December 1, 2007. [Id.] After her applications were denied initially and upon reconsideration, she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 92-97, 101-05, 107-08.] A hearing was held on October 4, 2012, at which time plaintiff appeared represented by an attorney and testified on her own behalf. [AR at 8-29.] A vocational expert ("VE") and medical expert ("ME") also testified. [AR at 11-14, 25-28.] On October 11, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from December 1, 2007, through the date of the decision. [AR at 75-87.] When plaintiff's request for review of the hearing decision [AR at 6] was denied by the Appeals Council on December 9, 2013 [AR at 1-4], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, December 1, 2007.[1] [AR at 77.] At step two, the ALJ concluded that plaintiff has the severe impairments of carpal tunnel syndrome and arthritis. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. [AR at 77.]

4

impairments that meets or medically equals any of the impairments in the Listings.[2] [AR at 80.] The ALJ further found that plaintiff retained the RFC[3] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] with the following limitations: occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; push and pull within the weight limits; use hands for fine and gross manipulation; frequently bend, kneel, crawl, and crouch; and avoid work around heavy moving machinery. [AR at 80.] At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as an admitting clerk, real estate clerk, and real estate agent. [AR at 86.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from December 1, 2007, through the date of the decision. [AR at 86.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred by failing to (1) find that she suffers from a severe impairment of depression; and (2) properly account for her severe impairment of carpal tunnel syndrome in the RFC determination. [Joint Stipulation ("JS") at 3-5.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

/

/

---

[2] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

1  **A.   SEVERE IMPAIRMENT**

2  Plaintiff contends that the ALJ erred by rejecting the opinion of her treating psychiatrist and
3  concluding that she does not suffer from a severe impairment of depression. [JS at 3-5.]

4  "There are three types of medical opinions in social security cases: those from treating
5  physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec.
6  Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a
7  general rule, more weight should be given to the opinion of a treating source than to the opinion
8  of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec.,
9  613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled
10 to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan,
11 528 F.3d at 1198.

12 "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical
13 opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation
14 marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where
15 such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons
16 that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal
17 quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite
18 specific and legitimate standard "by setting out a detailed and thorough summary of the facts and
19 conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157
20 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the
21 [treating or examining] doctors', are correct." Id.

22 In this case, the ALJ accorded "great weight to the findings and opinions of the consultative
23 examiner, Dr. Rodriguez," and found "nothing of record to contradict the consultative examiner's
24 opinions that [plaintiff] has a non-severe impairment" of depression. [AR at 79.] In reaching this
25 conclusion, the ALJ failed to mention, much less thoroughly address, the medical evidence from
26 plaintiff's treating psychiatrist, Dr. F. de Jesus. More weight generally is given to the opinions of
27 treating physicians because they "are likely to be the medical professionals most able to provide
28

6

a detailed, longitudinal picture of [plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(c)(2)(i), (ii) and 416.927(c)(2)(i), (ii) (according weight to a treating physician's opinion depending on length of the treatment relationship, frequency of visits, and nature and extent of treatment received); see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

The record reflects multiple treatment records from Dr. de Jesus, who regularly treated plaintiff for anxiety and depression from April 21, 2011, through February 20, 2012. [See AR at 250-51, 273-76, 303-07, 320.] On April 22, 2011, Dr. de Jesus diagnosed plaintiff with major depressive disorder and general anxiety disorder and evaluated her Global Assessment of Functioning ("GAF")[5] score as 50. [See AR at 250.] A GAF score of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 34. Given the length of Dr. de Jesus's treatment of plaintiff, spanning nearly a year, it was error to ignore his opinion while according "great weight" to the opinion of the consultative medical examiner, Dr. Rodriguez, who only met with plaintiff once and based his evaluation on her self report rather than a review of her medical record. [See AR at 297.] The ALJ offers no explanation for finding Dr. Rodriguez's one time examination of plaintiff to be more probative of her mental impairment than the opinion of her treating psychiatrist, Dr. de Jesus, who had a longitudinal treatment relationship with plaintiff and was, therefore, in a better position to integrate the medical evidence and provide an overall conclusion. The ALJ's conclusion that

---

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).

"nothing of record" contradicts Dr. Rodriguez's opinion is a mischaracterization of the record.[6]

A severe impairment is shown when the evidence establishes more than a minimal effect on an individual's ability to do basic work activities. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a) and 416.921(a). Here, Dr. de Jesus assigned plaintiff a GAF score of 50, which indicates a serious impairment in functioning including an inability to keep a job. See DSM-IV, at 34. Hence, absent proper rejection of Dr. de Jesus's opinion, the ALJ erred in not finding plaintiff's depression to be a severe impairment. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("[T]he ultimate conclusions of [treating] physicians must be given substantial weight; they cannot be disregarded unless [the] reasons for doing so exist and are set forth in proper detail.") (citing Delgado v. Heckler, 722 F.2d 570, 574 (9th Cir. 1983)).

For the reasons discussed above, as the ALJ's implicit rejection of Dr. de Jesus's opinion was not supported by any specific and legitimate reasons, the Court cannot find that the ALJ's conclusion that plaintiff's depression is not a severe impairment was proper. Remand is warranted.

## B.   RESIDUAL FUNCTIONAL CAPACITY

Plaintiff contends that the ALJ erred in the RFC assessment by failing to consider limitations from impairments in her upper extremities, including carpal tunnel syndrome, and thus the ALJ's conclusion was "contrary to the medical evidence." [JS at 10-12.]

---

[6] While a GAF score may not have a "direct correlation" to the Social Security severity requirements (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. § 50746–01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. de Jesus's assessment of a GAF score of 50 and its implications may be ignored without sufficient reason. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (instructing that a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Sorenson v. Astrue, 2008 WL 1914746, at *18 (N.D. Iowa Apr. 28, 2008) (noting that a GAF score is used by medical professionals "to consider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness") (internal quotation marks and citations omitted); Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (holding that an ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment" was error).

Here, the relevant medical treatment records consist of: (1) emergency room records from Hemet Valley Medical Center; (2) the opinion of consultative medical examiner, Dr. Bryan H. To; and (3) the opinion of medical expert, Dr. Eric D. Schmitter, who telephonically testified at the October 4, 2012, hearing. [AR at 11-14, 231-44, 265-70, 348-63.]

As acknowledged by the ALJ, on several occasions plaintiff's left arm pain led her to seek emergency treatment at Hemet Valley Medical Center. [See AR at 87, 231-44, 348-63.] For example, on January 3, 2011, plaintiff presented with "exquisite and reproducible discomfort" of her left arm and mid-humerus area. [AR at 231.] The treating physician also noticed that plaintiff's left trapezius area was "tender with palpitation," and diagnosed plaintiff with "possible cervical radiculopathy" in addition to "left arm discomfort." [AR at 231-32.] On July 19, 2012, plaintiff presented to the emergency room again, and was diagnosed with "right elbow tendonitis," and advised to "limit the use of her right hand." [AR at 349.]

On June 17, 2011, Dr. To found plaintiff to have positive Tinel's and Phalen's signs on both wrists and included in his "Discussion/Diagnoses" section that she was diagnosed with bilateral carpal tunnel syndrome in 1996. [AR at 265-70.] Dr. To noted that plaintiff was wearing wrist braces, and was "recently diagnosed with tendinitis in the right wrist." [AR at 265.] He further found that there was "documentation [plaintiff] has been seen in the emergency room with the impression of left arm discomfort, possible cervical radiculopathy." [AR at 268.] Dr. To opined that plaintiff was able to use her hands for fine and gross manipulation "on [a] frequent basis." [AR at 268-69.]

At the hearing on October 4, 2012, Dr. Schmitter testified that carpal tunnel syndrome is caused by tendinitis. [AR at 13.] He opined that for persons with carpal tunnel syndrome, "[f]ingering that is fine touch is always interfered with to some degree." [AR at 14.]

In this case, the ALJ found that plaintiff suffered from a severe impairment of carpal tunnel syndrome. [AR at 77.] But he also concluded that "[plaintiff] can use [her] hands for fine and gross manipulation." [AR at 80.] In so doing, it appears that the ALJ selectively relied on only certain portions of the medical record and either ignored limitations, or failed to address certain other medical evidence altogether. For example, the ALJ does not mention that, according to Dr.

Schmitter, persons with carpal tunnel syndrome would always be limited to some degree in their ability to manipulate with fine touch. [See AR at 14 (testimony of ME regarding effects of carpal tunnel syndrome).] Additionally, although the ALJ acknowledged the specific limitation that Hemet Medical placed on plaintiff's use of her right hand, he did not explain how despite this limitation, plaintiff could nevertheless use her hands to perform fine and gross manipulation for 8 hours a day, 5 days a week. [AR at 14; cf. AR at 85.] An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (It is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (finding error for an ALJ to ignore competent evidence in the record in order to justify his conclusion); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Accordingly, because the ALJ selectively relied on only certain portions of the medical evidence and did not explain inconsistencies and ambiguities between the medical evidence and his RFC assessment, the Court cannot find that substantial evidence supports the ALJ's conclusion that plaintiff is not limited in her ability to use her hands for fine and gross manipulation.

/

/

/

**VI.**

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, the Court finds that this action must be remanded to allow the ALJ to properly consider whether, based on the opinion of plaintiff's treating psychiatrist, her depression is a severe impairment, and what limitations, if any, stem from her carpal tunnel syndrome. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 7, 2014

　　　　　　　　　　　　　　　/s/ Paul L. Abrams
　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE